## Diebold Safe and Lock Company v. Albert Barnes.

1. SETTLEMENT—*End of the Controversy.*—Where an actual settlement of a controversy has been, by the parties to it, deliberately made, without fraud or misrepresentation on the one side, or ignorance or misunderstanding of any material fact on the other, it ends the matter as between them.

**Memorandum.**—Assumpsit for goods sold, etc. Error to the Circuit Court of Macon County; the Hon. EDWARD P. VAIL, Judge, presiding. Heard in this court at the November term, 1893, and affirmed. Opinion filed February 12, 1894.

The opinion states the case.

BUCKINGHAM & SCHROLL, attorneys for plaintiff in error.

W. C. JOHNS, attorney for defendant in error.

MR. JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

This case, which is brought to recover part of the contract price of a new safe, sold by plaintiff in error to defendant in error, was submitted to the court on the following stipulations: The defendant bought a new safe as described in the order of plaintiff, and was to give an old safe and seventy-five dollars therefor, and deliver old safe at depot in Decatur, plaintiff to deliver the new safe so sold at the depot in Decatur. That defendant delivered the said old safe at the depot and plaintiff received and took it away from Decatur; that plaintiff shipped a new safe of the kind specified in order to defendant and it arrived at the depot in Decatur, where it was unloaded and placed in the Wabash freight house by the railroad employes, and that the freight house was burned the same night and the new safe ruined, and thereupon, after some correspondence between plaintiff and defendant, plaintiff shipped to defendant, and defendant received a second new safe, and plaintiff gave defendant credit for the old safe and seventy-five dollars, paid them by

Diebold Safe & Lock Co. v. Barnes.

defendant in cash. Plaintiff claims in this action four hundred dollars as the price of the safe. All the correspondence between the plaintiff and defendant, including the order or contract for said safe, and between the plaintiff and the officers of the Wabash Railway Company, shall be and is hereby submitted to the court as evidence in this suit. And if the court shall be of the opinion, after reading such correspondence and orders or contracts, that the defendant is liable to the plaintiff for the price of the safe, then a judgment shall be entered in favor of plaintiff and against the defendant for four hundred dollars, and the said ruined safe now at the depot in Canton, Ohio, shall be taken by plaintiff at one hundred dollars as a credit upon said judgment without prejudice to either party as to ownership of said ruined safe. But if the court shall be of the opinion, after reading said correspondence, order or contracts, that plaintiff is not entitled to recover against the defendant for said safe, then judgment shall be entered against the plaintiff. Both parties reserve the right of appeal or writ of error as though the cause had been tried in the usual way. Each party may furnish the court with briefs and file them with this stipulation, and may make an oral argument at a time to be appointed by the court."

Judgment was rendered for the defendant and thereupon this writ of error was sued out.

The order from Barnes to Buzzell & Blair, general agents of the Diebold Safe and Lock Co., at Chicago, was as follows:

"Decatur, Ill., Aug. 25, 1890.

Please ship as directed one E safe, burglar proof, etc., for which I agree to pay to your order the sum of $75 net cash current funds and one Diebold Safe No. 48. Both safes to be delivered at depot in Decatur, I to deliver old safe and you new one.

Albert Barnes."

The correspondence, so submitted, is too voluminous to be here set out in full. Only the substance of so much of it as is deemed material will be stated.

It opens with a brief letter from Barnes to Buzzell & Blair of November 22, 1890, advising them that the safe so ordered was received at the Wabash depot on the Thursday last preceding, and on the next morning the depot was destroyed by fire and the safe ruined, and asking them what steps he should take in the matter.

Their reply was that he should at once make claim against the railroad company for the value of the safe.

On the 28th he wrote to them that when it arrived and was unloaded, he was out of the city and had no notice of its arrival nor received it from the railroad company, nor receipted to them for it; that the question of its ownership at the time of the fire was likely to arise; that the opinion seemed to prevail that the title would not pass from the safe company until he receipted for and accepted it; and that until that question was definitely settled, he must decline to present his bill to the railroad company for the safe or release them or the safe company.

They replied on the 29th that they had no doubt upon the question; that the safe had been delivered at the depot, in accordance with the order and contract, and whether he had received notice of its arrival or taken it from the depot or not, could not affect the safe company; that their legal advisers had confirmed them in that opinion, and that they did not propose to push the claim against the railroad company unless compelled.

On the same day, and probably before he received that letter, he inclosed to them a copy of a telegram from Mr. Knight, the general freight agent of the Wabash R. R. Co., as follows : " It is the opinion of our legal department that the safe and lock company should handle the claim, and that the safe was not in your possession; " and advised them that he should leave the matter of the loss in their hands and expect them to comply with the terms of his order and furnish him with a safe in accordance therewith.

They answered that Knight's inference was doubtless drawn from his (Barnes') presentation of the case, and that they adhered to their own view, as previously stated, but had submitted the matter to their home office.

Diebold Safe & Lock Co. v. Barnes.

On December 1st, W. W. Clark, president of the safe company, at Canton, Ohio, wrote to Barnes that their agents at Chicago had forwarded his letter of the 28th of November, and arguing that the railroad company was liable to him, suggested that he advise with his attorney on the subject, and at once make his claim against it.

Barnes replied, referring to his letter of the 28th of November and the telegram mentioned, and insisting that the safe company was liable for a new safe or the value thereof, according to his order.

December 4th, Clark wrote to Barnes that Buzzell & Blair had forwarded his letter of the 29th of November, from which it appeared that the counsel of the railroad company was of opinion that the safe company was the proper party to make the claim; still holding, for the reasons therein stated, that the safe was his property when destroyed; that it was immaterial, however, which party made the claim, but proposing, nevertheless, that he make it and assign it to the safe company, or hold it until the money should be paid and then pay it over to the safe company, and it would go forward and make for him another safe.

This proposition seems to be based upon the supposed concession of the railroad company that it was liable for the damage to, or destruction of the safe. But it claimed that if liable, it was to the safe company, and therefore, according to its view, the costs of prosecuting the claim was involved in the question whether Barnes or the safe company should make the claim. If the immateriality of that question, as supposed by Clark, depended upon or resulted from the concession of the railroad company as to its liability, it was unreasonable on his part to propose that Barnes should make the claim; for it might be contested and would be defeated at his cost, if the view of the railroad company was correct.

In his reply of December 5th, Barnes suggests that and other reasons, why he should not be prosecutor.

Clark then wrote to Knight, who replied, stating the

view of their counsel, upon which his telegram to Barnes was based, and that he had turned his letter over to Mr. Linchey, the freight claim agent of the railroad company, who was adjusting the matter and would take it up with him.

Then on December 12th, Clark wrote to Linchey, referring to the letter of Knight, stating what had been his opinion as to which party should make the claim, but that inasmuch as the attorney of the railroad company differed, asking him for the necessary instructions for making it.

On December 20th, he wrote to Barnes as follows:

" DECEMBER 20, 1890.
Albert Barnes, Esq., Decatur, Ill.

DEAR SIR: We get no response to our letter to Freight Claim Agent A. T. A. Linchey of St. Louis, Mo., dated 12th inst., and some time may elapse before it is fully decided who should make claim for the safe destroyed. As you want another safe to take the place of the one destroyed we have entered your order for a duplicate of first safe. Should railroad officials decide that that claim is to be made by us, then old trade goes through, we furnishing safe to replace the burned one, and look to railroad company for pay for safe destroyed.

If they decide that you shall make claim, then you pay us for safe destroyed in cash ($400), and the original deal will be carried out wholly independent of this burned safe and its adjustment.

By adopting this course we can at once go forward with the construction of the duplicate safe, leaving the railroad officials to decide who shall file the claim. Please advise if this does not meet your approval. Yours,

W. W. CLARK, Pres't."

To which Barnes, on the 21st, replied as follows:

" DEC. 21, 1890.

GENTLEMEN: Your favor of the 20th inst. received. In regard to a new safe, my recollection now is that I advised you that we should expect a duplicate safe under our con-

tract with you, and any duplicate which you may have commenced work upon, I should expect to receive, under the aforesaid contract, and should not expect it to be an original order in any sense of the word, for a safe other than a duplicate under former order and contract. I have just returned from St. Louis, where I saw Mr. Knight; he says that their claim agent has been advised of the claim and will give it his attention. Mr. Knight says there can be no question as to who are the proper parties to make claim for the loss, and that their legal department have advised him that you are the only parties that can, legally, make claim and proof of loss.

ALBERT BARNES."

Between that date and February 7, 1891, the correspondence between Clark and Linchey continued, relating to the amount the safe company would allow the railroad company for the burned safe which had been returned by the latter to the former for examination and estimate of its value, which need not be here more fully stated. On said 7th of February, 1891, Barnes wrote to Clark, advising him that he understood from Knight that he thought a settlement had been reached, and asking how soon he, Barnes, might expect a new safe in place of the one destroyed. This is the first letter between them appearing in the record after that of Barnes of December 21, 1890, above shown. Under date of February 9th, Clark replied that Knight doubtless supposed a settlement had been made, but that in fact it was only in process of being made, and adding: "We shipped your safe, however, on the 5th of this month, and trust it will go through without accident." And so it did.

We have been favored with a very elaborate, ingenious and instructive argument by counsel for plaintiff in error, to show that it was not barred of this action by any implied release, as by election to make its claim against the railroad company, because it was not so intended, nor by estoppel *in pais*, or by waiver. But we decline a discussion of the technicalities of these doctrines because we are of opinion that a simple solution of the question is to be found in the

fact of an actual settlement of this controversy by the parties to it, deliberately made, without fraud or misrepresentation on the one side, or ignorance or misunderstanding of any material fact on the other. Whether it operated against plaintiff in error by release, estoppel or waiver technically, is unimportant to determine. If agreed upon, and executed with full knowledge of the situation and circumstances, possessed on both sides, it ought to end the matter, as between them. It operates substantially, in almost every way by which a further claim on either side against the other could be barred.

The unquestioned evidence is that before the safe company began to manufacture the last safe for Barnes he distinctly notified it that he would not accept it otherwise than as a performance by it of the original contract. (Letter of December 21.) With that notice, without protest and relying upon the supposed admission by the railroad company of its liability to it for the destruction or damage of the first by the fire, it went on, made the second and shipped it to the defendant in error. It must be held that it so delivered it to him upon the terms he had stated. And it repeatedly so admitted. Besides the letter of Clark of February 9, 1891, from which we have above quoted, he wrote to Linchey on the 1st of April, that, having received the assurance of the officials of the railroad company that the safe company was the proper party to make the claim upon it, "we thereupon furnished Mr. Barnes a new safe and made our claim against your company." On the 8th he wrote again: "You will recollect that we abandoned our claim against Mr. Barnes and made him another safe without charge, to take the place of this burnt safe, on the strength of Mr. Knight's letter." And on June 2, 1891, he wrote to Barnes: "We have placed the claim this day in the hands of Buckingham & Schroll, attorneys of your city, and have written them that should it be necessary to have any one sign as security for costs, we being non-resident, we have no doubt you would accommodate us with your signature for that purpose," etc.

For some reason, perhaps in ignorance of these admis-

sions, and upon further examination of the law, these attorneys brought this suit against the plaintiff's proposed security for costs instead of the railroad company, but that can not impair the force of its actual settlement with Barnes, with full knowledge of the facts.

We think such settlement, whatever may be the law as to which of the parties, if either, would otherwise be liable to plaintiff upon the facts shown, is conclusive against it in this action.

It is, therefore, unnecessary to decide as to the propriety of the court's ruling upon the propositions of law submitted. Judgment affirmed