Stone's Beauty Shops, Inc., Appellee, v. Morrison Service Association, Appellant.

Gen. No. 38,569.

164

Opinion filed April 22, 1936.

YALE & YALE, of Chicago, for appellant.

SCHUYLER, WEINFELD & HENNESSY, of Chicago, for appellee; HOWARD D. MOSES, of Chicago, of counsel.

MR. JUSTICE HEBEL delivered the opinion of the court.

This action was filed in the municipal court of Chicago by the plaintiff to recover from the defendant money in the sum of $3,626.22, which the defendant retained from money collected by it while in charge of and operating plaintiff's business by virtue of certain notes and a chattel mortgage executed by the plaintiff,

which money so retained was without the consent of the plaintiff.

To this action the defendant filed its affidavit of merits, wherein it admits the making of the original agreement by the defendant, and that one Louis Morrison took charge of plaintiff's business and collected the income and deposited the money in a bank account in the defendant's bank. It further admits that the plaintiff executed a chattel mortgage conveying all its assets to secure the loan, and admits threatening to foreclose by reason of certain defaults under the terms of the contract as well as of the chattel mortgage, but denies plaintiff protested Louis Morrison's presence or control in the issuance of checks which were charged to the plaintiff. Defendant denies that plaintiff objected to the payment of salaries of $35 or $50 a week, received by the defendant's agent Louis Morrison, but admits that they were paid to Louis Morrison, individually, for services performed by him at the request of the plaintiff. Defendant also denies that further and other payments were objected to by the plaintiff.

A jury trial was had and a verdict returned finding the issues for the plaintiff and assessing damages in the sum of $1,800, upon which the court entered judgment, and from which defendant appeals.

The facts are, substantially, that the plaintiff borrowed $7,500 from the defendant and in consideration therefor executed and delivered to the defendant 11 promissory notes, two for $500 each and nine for $1,000 each, aggregating the sum of $10,000; that the notes were payable one each month for 11 months, and a chattel mortgage was given upon plaintiff's chattels to secure the payment of said loan; that when the first note was about to become due, the defendant took possession of plaintiff's property and business and proceeded to handle the funds thereof by placing its

representative Louis Morrison at plaintiff's place of business; that all funds collected from plaintiff's business were deposited in the bank account of the defendant. Upon this fund, checks were drawn by Harry Morrison, an agent of the defendant, in the payment of certain items charged against the plaintiff in the operation of its business, and among other payments made out of plaintiff's funds was the sum of $812.50 for divers commissions, and also money drawn by Louis Morrison for salary and other items charged against the plaintiff's account.

Plaintiff company, a corporation, operated 29 beauty shops and also manufactured supplies for use in beauty shops. In the year 1932, a petition in bankruptcy was filed against the company, and shortly thereafter a composition agreement with the creditors of the corporation was entered into, providing for the payment by the debtor, this plaintiff, of the sum of $7,500 in cash and the balance due the creditors in notes in full discharge of its various debts. Plaintiff not having sufficient funds on hand, Louis Stone, plaintiff's manager, applied to the defendant for a loan, and by agreement the defendant loaned to the plaintiff the sum of $7,500 for which the plaintiff company executed and delivered to the defendant 11 notes, hereinabove referred to, aggregating the sum of $10,000. The $7,500 was paid by the defendant directly to the clerk of the federal court to satisfy the composition agreement entered into between the plaintiff company and the creditors of the plaintiff. Thereafter an additional loan was negotiated and entered into with the defendant upon the same terms as the notes secured by chattel mortgage. Plaintiff experienced some delay in getting this property back from the Receiver in Bankruptcy, and before it was well started in business the first of the mortgage notes became due. A few days before the note was actually due and before there had been

any actual default, the elder Morrison came to plaintiff's office and announced that in view of the impending default, "he was going to run the place from that time on." It is claimed over the protest of plaintiff's manager, Louis Stone, defendant insisted on putting in his younger son, Louis Morrison, to "watch the running of the business." When Morrison took possession of the assets and business of the plaintiff company Harry Morrison, the treasurer of this company was appointed to handle all the money of the plaintiff company, sign all checks and pay all bills. From that time on, the Morrisons operated plaintiff's business and opened a bank account in the name of their own company and deposited plaintiff's money therein, and from this fund they paid out, on checks drawn by Harry Morrison, such sums as they determined should be paid, and thereafter paid to Louis Morrison, who was in charge of the business, $35 at first, and later $50 a week as salary while acting as a representative of the defendant in the control of the business. The total salary paid to Louis Morrison aggregated $2,561.67.

In October, 1933, the plaintiff negotiated a new loan of $1,980 from the defendant, for which the plaintiff executed its note for $2,500. Subsequently the plaintiff negotiated a loan from another company and paid off these notes.

The plaintiff contends that the defendant charged unlawful commissions and expenses on the loans, and when the plaintiff paid the two notes it settled any dispute it had with the defendant as to those two notes, but that did not involve any transactions under the first loan. While the defendant was in sole control of the funds it paid out such amounts as it saw fit, and the amount of the money loaned to the plaintiff was $9,480 for about a year. From the evidence it appears that the defendant charged and collected from the

plaintiff for principal, interest, commissions and other charges, the sum of $15,976.22.

From an examination of the record the evidence called to our attention by the parties to this litigation is conflicting. The defendant argues that the plaintiff consented to the payment of the items complained of, and that the money so used was with full knowledge of the plaintiff and without objection by it until the filing of this suit in the municipal court.

It is apparent from the affidavit of merits filed by the defendant that possession of plaintiff's business was taken by defendant after threatening the plaintiff with foreclosure because of defaults under the terms of the chattel mortgage. From the terms of the contract referred to by the defendant, and also the chattel mortgage, we are to determine the rights of the parties. The important question to be considered is whether the amounts retained by the defendant from the collection of income from plaintiff's business and received by the defendant can be recovered in this action by reason of the threats to foreclose the chattel mortgage. Plaintiff's position is that the money was unlawfully appropriated by the defendant, and therefore the plaintiff is entitled to recover the amount so misappropriated.

The general rule of law is that the mere threat of a party to exercise a legal right acquired by virtue of a contract is not in and of itself actionable. Courts of review in passing upon the question of a threat to foreclose a trust deed in which the party has a legal right to foreclose have held that this does not constitute duress as to the execution of another note and trust deed to prevent foreclosure. *Hart v. Strong,* 183 Ill. 349. To the same general effect is the case of *Helmick v. Carter,* 171 Ill. App. 25. Upon this question the court said:

"It has been repeatedly held by the Supreme Courts of this and other states that the payment of money to prevent the bringing of legal action against a party upon a subsisting claim is not duress, and that a payment made to prevent such legal action is a voluntary payment."

To determine whether or not a cause of action existed, it is necessary to decide whether defendant, acting as it did, deprived the plaintiff of funds to which it had a right, and whether upon a demand by the plaintiff of a return of these funds the defendant failed to meet this demand.

The defendant in this case was in charge of the business of the plaintiff for several months. Statements were made each month under the direction of the plaintiff showing income and disbursements, which included money received and disbursed by the defendant. Therefore, from the facts as we view them, the plaintiff is chargeable with knowledge of the items contained not alone in the monthly statements, but also in the books of account kept by plaintiff's employees.

The plaintiff further contends that the payment of certain money to the defendant company for the extension of defaulted notes was excessive. It appears from the evidence that this was done with the knowledge of the plaintiff and upon advice of its counsel at the time of the extension. Finally, the dealings between the plaintiff and the defendant were adjusted by the payment of the balance of the loan, and this only after a deduction was agreed to by the defendant of $150 upon the amount then due from the plaintiff. As a result of the agreement the chattel mortgage and notes in question, together with application for loans, were turned over to Mr. Friede of the First United Finance Company, and the sum due the defendant was received by it from this company.

During the negotiations for a final adjustment of plaintiff's account, it was advised by an attorney; had full knowledge of all the facts, and consented to the payment of the money to the defendant. No claim is made that the plaintiff was misled by fraudulent statements or misrepresentations, and the Appellate Court in the case of *Diebold Safe & Lock Co. v. Barnes*, 53 Ill. App. 144, an action *in assumpsit* for goods sold and delivered, said upon a like question: "But we decline a discussion of the technicalities of these doctrines because we are of opinion that a simple solution of the question is to be found in the fact of an actual settlement of this controversy by the parties to it, deliberately made, without fraud or misrepresentation on the one side, or ignorance or misunderstanding of any material fact on the other. Whether it operated against plaintiff in error by release, estoppel or waiver technically, is unimportant to determine. If agreed upon, and executed with full knowledge of the situation and circumstances, possessed on both sides, it ought to end the matter, as between them. It operates substantially, in almost every way by which a further claim on either side against the other could be barred."

Several other objections are made, the principal of which is that where there are several distinct demands in a statement of claim, it is error for the court to refuse a request to direct the jury to find a separate verdict upon each demand. We cannot agree that the court erred in this respect. The transactions between the parties naturally resulted in several and divers items growing out of a single transaction. It would surely clutter up the record of the court if the court should direct that the jury return a separate verdict as to each item, and this fact is self-evident when, as in this case, it appears that the defendant presented 25 special interrogatories to be submitted to the jury for an answer of "Yes" or "No." The court did not err in its refusal.

It will not be necessary to consider the other objections in view of the fact that a further trial must be had.

The action hinges largely upon a question of fact. While this court hesitates to reverse a judgment based upon the verdict of a jury, still where it is apparent that the theory of the defendant was not clearly presented to the jury, the cause should be remanded for a new trial. The court will not enter a judgment which is not consistent with the theory of the parties. Either the plaintiff was entitled to the full amount of the claim sued for, or the verdict should have been for the defendant. *Galomopoulos v. Petropoulos,* 147 Ill. App. 1.

The cause must be reversed and remanded for another trial, and it is so ordered.

*Judgment reversed and cause remanded.*

HALL, P. J., and DENIS E. SULLIVAN, J., concur.